UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**25-CR-20351-GAYLES/ELFENBEIN**

CASE NO. _____

18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

ERI GUZMAN ORTIZ,
    a/k/a "Eri Guzman,"
    a/k/a "Cindy Sullivan,"

        Defendant.

_____/

FILED BY _____BM_____ D.C.

Aug 7, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At times relevant to this Indictment:

1.    Defendant **ERI GUZMAN ORTIZ** was a resident of Miami-Dade County. **GUZMAN ORTIZ** operated a group of companies known as "Paysoft" that purported to specialize in E-check processing.

2.    Client 1 was a Canadian national residing in Quebec.

3.    **ERI GUZMAN ORTIZ**, who often went by Eri Guzman, sometimes used the alias "Cindy Sullivan" when communicating with Client 1.

4.    A remotely created check ("RCC") or demand draft was a type of check which did not bear the account owner's signature. In place of the account owner's signature, a RCC contained a statement to the effect that the account owner authorized the check.

## COUNTS 1-5
## Wire Fraud
## (18 U.S.C. § 1343)

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     Beginning no later than in or around 2015, and continuing through in or around December 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ERI GUZMAN ORTIZ,**
**a/k/a "Eri Guzman,"**
**a/k/a "Cindy Sullivan,"**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.     It was a purpose of the scheme and artifice for the defendant and his accomplices to enrich themselves through depositing fraudulent and unauthorized checks on behalf of Client 1 in exchange for a fee based on a percentage of the total amount of the checks deposited.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

The manner and means by which the defendant and his accomplices sought to accomplish the purpose of the scheme and artifice included, among other things, the following:

4.     Using victim information provided by Client 1, **ERI GUZMAN ORTIZ**, together

2

with others, created fraudulent RCCs and deposited them into bank accounts for sham companies, including companies that Client 1 controlled. By depositing the RCCs into the bank accounts of the sham companies, **GUZMAN ORTIZ** caused money to be transferred from victims' bank accounts to the bank accounts of the sham companies without the victims' authorization.

5. To create the fraudulent RCCs, Client 1, together with others, obtained personal information about potential victims, including their names, addresses, and bank account routing and account numbers. Client 1 used that victim information to send **ERI GUZMAN ORTIZ** lists of people and businesses who had purportedly made purchases from sham companies and had purportedly agreed for their bank accounts to be debited by the sham companies. In fact, these people and businesses had not made purchases from the sham companies and had not authorized debits from their bank accounts.

6. **ERI GUZMAN ORTIZ**, together with others, knowingly deposited fraudulent RCCs totaling over $12 million for Client 1's sham companies. In return for his role in the scheme, **GUZMAN ORTIZ** was paid a portion of the dollar value of the checks he deposited on behalf of Client 1, and he also received payment based on the number of checks deposited.

7. **ERI GUZMAN ORTIZ** knew that banks sometimes closed or froze the sham companies' accounts into which he deposited fraudulent RCCs. When that happened, to facilitate the continued fraudulent debits, **GUZMAN ORTIZ** sometimes suggested to Client 1 that **GUZMAN ORTIZ** switch the payee name on the RCCs from one sham company to another. For example, in April 2020, **GUZMAN ORTIZ** emailed Client 1 that a bank had "rejected" deposits for two of the sham companies. **GUZMAN ORTIZ** followed up by "suggest[ing] re-submitting these files for deposit" under the name of a completely different sham company. Similarly, in May 2020, **GUZMAN ORTIZ** emailed Client 1 that a bank "has rejected both deposits today. Let me know if you want us to re-print to [name of a different sham company]."

8.      To facilitate continued fraudulent debits, **ERI GUZMAN ORTIZ** also advised Client 1 how to avoid suspension of bank accounts for the sham companies. In December 2021, **GUZMAN ORTIZ** "did a quick analysis of the life term of the accounts and have calculated that They tend to last upto [sic] 3 weeks from commencing deposits." **GUZMAN ORTIZ** suggested temporarily pausing deposit activity before banks close the accounts: "I recommend that after 2 ½ weeks, you hold the deposits on these accounts when they Reach this term. You can re-use them after 10-days I think, allowing the banks to see a 'rest' time on the account." During the pause period, **GUZMAN ORTIZ** wrote, Client 1 "can move over the deposits to your other proxy accounts."

9.      In furtherance of the scheme, and to facilitate continued fraudulent debits, in September of 2022, **ERI GUZMAN ORTIZ** offered another "recommendation" to avoid the closing of the sham companies' bank accounts: falsely describing sham companies so they would be given more leeway by banks regarding the percent of returned checks. **GUZMAN ORTIZ** wrote to Client 1: "Setup a Medical Services Company. Such as: Emergency Care Services Inc… Some banks give this business type More leeway." **GUZMAN ORTIZ** suggested another option as well: "Setup a Foundation.  i.e.  ESG FOUNDATION or MEDI-CARE FOUNDATION …These two types of structures can handle perhaps 200-300,000$ of deposits before the Bank may say =hold=." By recommending inaccurate names for the sham companies, **GUZMAN ORTIZ** sought to help the sham companies' bank accounts stay open longer so **GUZMAN ORTIZ** could deposit more fraudulent checks.

10.      In furtherance of the scheme, **ERI GUZMAN ORTIZ** concealed his and Client 1's activities when **GUZMAN ORTIZ** was contacted by a police detective in February 2021 about one of Client 1's sham companies. **GUZMAN ORTIZ** falsely told the detective "that the account is no longer with us." In fact, **GUZMAN ORTIZ** and Client 1 agreed to continue depositing checks using a different sham company as the payee.

4

11. **ERI GUZMAN ORTIZ** also used RCCs to transfer fraud proceeds on behalf of Client 1. To facilitate and justify the transfers, **GUZMAN ORTIZ** created and offered to create fake documents to conceal the true nature of the transactions.

12. Between at least 2020 and 2023, **ERI GUZMAN ORTIZ** tried to increase the amount of money he made from the scheme by stealing certain of the fraud proceeds from Client 1. One example occurred starting in or around July and August 2023. Client 1 emailed **GUZMAN ORTIZ** about cashing two cashier's checks, one for $37,538.49 and the other for $17,172.87. The cashier's checks contained proceeds of the wire fraud scheme. **GUZMAN ORTIZ** agreed to cash the checks for a 20 percent fee, and so Client 1 shipped the checks to **GUZMAN ORTIZ**. **GUZMAN ORTIZ** formed two companies, which corresponded to the payee names on the two cashier's checks. **GUZMAN ORTIZ** then opened bank accounts for those two companies, provided false information to banks, and deposited the cashier's checks in the bank accounts. Instead of transmitting the funds, minus the 20 percent fee, to Client 1, **GUZMAN ORTIZ** kept the money from the two checks. Between in or around August and December 2023, **GUZMAN ORTIZ** provided Client 1 with a variety of false excuses for delays in sending the proceeds to Client 1.

## USE OF THE WIRES

On or about the dates specified below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, **ERI GUZMAN ORTIZ**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as described below:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 1 | February 25, 2021 | Email from **ERI GUZMAN ORTIZ** in the Southern District of Florida to Client 1 in Canada |
| 2 | December 16, 2021 | Email from **ERI GUZMAN ORTIZ** in the Southern District of Florida to Client 1 in Canada |
| 3 | February 2, 2022 | Email from **ERI GUZMAN ORTIZ** in the Southern District of Florida to Client 1 in Canada |
| 4 | September 9, 2022 | Email from **ERI GUZMAN ORTIZ** in the Southern District of Florida to Client 1 in Canada |
| 5 | September 5, 2023 | Email from **ERI GUZMAN ORTIZ** in the Southern District of Florida to Client 1 in Canada |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 6
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

Beginning in or around 2015, and continuing through in or around December 2023, the exact dates being unknown to the Grand Jury, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**ERI GUZMAN ORTIZ,**
**a/k/a "Eri Guzman,"**
**a/k/a "Cindy Sullivan,"**

did knowingly and voluntarily combine, conspire, confederate, and agree with Client 1 and others known and unknown to the Grand Jury, to conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of a specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18,

6

United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 7-10
### Money Laundering
### (18 U.S.C. § 1956(a)(1)(B)(i))

On or about the dates set forth below, in Miami-Dade County, in the Southern District of

Florida, and elsewhere, the defendant,

**ERI GUZMAN ORTIZ,**
**a/k/a "Eri Guzman,"**
**a/k/a "Cindy Sullivan,"**

did knowingly conduct, and attempt to conduct, a financial transaction affecting interstate and

foreign commerce, which financial transaction involved the proceeds of specified unlawful activity,

knowing that the property involved in the financial transaction represented the proceeds of some

form of unlawful activity, and knowing that the transaction was designed in whole and in part to

conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified

unlawful activity, as set forth below:

| Count | Approximate Date | Financial Transaction |
|---|---|---|
| 7 | September 3, 2021 | Deposit in the Southern District of Florida of a $40,000 RCC, drawn on a Bank of American account ending in 0980, into a First America Bank account ending in 8001. |
| 8 | September 14, 2021 | Wire transfer from the Southern District of Florida of $38,6000 from a First American Bank account ending in 8001 to a bank account ending in 4209 in the Dominican Republic. |
| 9 | February 22, 2022 | Transfer from the Southern District of Florida to Massachusetts of an RCC for $25,000, drawn on a Bank of America account ending in 0980, for deposit into a Bank of America account ending in 5932. |
| 10 | April 19, 2022 | Transfer from the Sothern District of Florida to Massachusetts of 4 RCCs totaling $55,000, drawn on a ~~First American~~ Bank of America account ending in 0980, for deposit into a Bank of America account ending in 5932. |

7

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## FORFEITURE
### (18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1))

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ERI GUZMAN ORTIZ**, has an interest.

2.      Upon conviction of a violation of, or a conspiracy to violate, Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(l)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

3.      Upon conviction of a violation of, or a conspiracy to a violate, Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a sum of money equal in value to the total amount of funds involved in or derived from the alleged offenses, which may be sought as a forfeiture money judgment.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

███████████████████

FOREPERSON

HAYDEN O'BYRNE
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

LISA K. HSIAO, ACTING DIRECTOR
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

DANIEL ZYTNICK
SPEARE HODGES
TRIAL ATTORNEYS
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**CASE NO.:** 25-CR-20351-GAYLES/ELFENBEIN

v.

ERI GUZMAN ORTIZ,

**CERTIFICATE OF TRIAL ATTORNEY**

_____/
Defendant.

**Superseding Case Information:**

New Defendant(s) (Yes or No)_____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)

☑ Miami   ☐ Key West   ☐ FTP
☐ FTL   ☐ WPB

I do hereby certify that:

1.  I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) No
    List language and/or dialect:_____

4.  This case will take ___8___ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                (Check only one)
    I   ☐ 0 to 5 days               ☐ Petty
    II  ☑ 6 to 10 days              ☐ Minor
    III ☐ 11 to 20 days             ☐ Misdemeanor
    IV  ☐ 21 to 60 days             ☑ Felony
    V   ☐ 61 days and over

6.  Has this case been previously filed in this District Court? (Yes or No) No
    If yes, Judge_____ Case No._____

7.  Has a complaint been filed in this matter? (Yes or No) No
    If yes, Judge_____ Magistrate Case No._____

8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) No
    If yes, Judge_____ Case No._____

9.  Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No

14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____AUSA _____

DANIEL ZYTNICK
DOJ Trial Attorney
SDFL Court ID No.   A5502537

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: _____ **ERI GUZMAN ORTIZ** _____

Case No: _____

Counts #:  1 – 5

Title 18, United States Code, Section 1343

Wire Fraud
* **Max. Term of Imprisonment:   20 years as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $250,000 or twice the gross gain or loss from the offense**

Count #:  6

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering
* **Max. Term of Imprisonment:   20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $500,000 or twice the value of the property involved in the transaction**

Counts #:  7 – 10

Title 18, United States Code, Section 1956(a)(1)(B)(i)

Money Laundering
* **Max. Term of Imprisonment:   20 years as to each count**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:   3 years**
* **Max. Fine:   $500,000 or twice the value of the property involved in the transaction**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**